**LEILA W. MORGAN**
California Bar No. 232874
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Leila_Morgan@fd.org

Attorneys for Mr. Rico-Carillo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE RICO-CARRILLO,<br><br>Defendant. | ) | CASE NO.: 08CR0363-DMS<br><br>DATE: March 21, 2007<br>TIME: 11:00 a.m.<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**STATEMENT OF FACTS[1]**

On January 31, 2008, at 2:35 a.m., Mr. Rico-Carillo made application for admission into the United Sates through the San Ysidro, California Port of Entry pedestrian lanes. Upon inspection by a Customs and Border Protection Officer he is alleged to have claimed United States Citizenship by virtue of his birth in Orange County, California and that he was traveling to La Habra, California. After he was unable to produce identification he was sent to secondary inspection.

Records checks at secondary inspection revealed a prior immigration and criminal history. Including

1. The following is based primarily upon information supplied through Government discovery. Mr. Rico-Carillo does not stipulate to its accuracy and reserves the right to challenge it at future proceedings.

that he was served with an administrative removal order and physically removed from the United States on February 6, 2003. While in the secondary inspection area Mr. Carrillo informed officers that he was taking Paxil and Benadryl because he suffers from depression and allergies. He also explained to the officers that he was instructed by the "Mexican Human Rights" to reenter the United States, claim United States citizenship, and get arrested in order to return to jail to receive his medications. He was subsequently arrested and turned over the criminal enforcement unit for processing.

At approximately 4:30 am. Mr. Carillo was informed of his Miranda rights, which he invoked. On February 13, 2008, an indictment was filed charging Mr. Carillo with one count of attempted reentry after deportation in violation of 8 U.S.C. § 1326(a)_and (b) and one count of false claim to United States Citizenship in violation of 18 U.S.C. § 911.

These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Rico-Carrillo moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

To date, ***defense counsel has received only 201 pages of discovery***. Mr. Rico-Carrillo respectfully requests that the Government be ordered to produce discovery because Mr. Rico-Carrillo has reason to believe that she has not received all the discoverable material in his case. Mr. Rico-Carrillo **specifically requests production of a copy of the taped proceedings and any and all documents memorializing the deportation proceeding allegedly held and any other proceedings that the Government intends to rely upon at trial**. This request includes discovery of materials known to the Government attorney, as well as discovery of materials which the Government attorney may become aware of through the exercise of due diligence. See FED. R. CRIM. P. 16.

Mr. Rico-Carrillo has also not received a full copy of his A-file. Mr. Rico-Carrillo specifically requests the documents memorializing the alleged deportation proceedings and any other proceedings that the Government intends to rely upon at trial.

Mr. Rico-Carrillo additionally requests that the Court order the Government to allow her the opportunity to review her A-file in its entirety. First, the A-file contains documentation concerning his alleged deportation. Part of Mr. Rico-Carrillo defense may be that her underlying deportation was invalid. The documents in the A-file would help illuminate the validity or futility of such a defense. For example, A-file documents typically contain biographical information. Such information is essential to determining whether Mr. Rico-Carrillo's deportation was invalid.

Second, the Government will likely try to show at trial that a Government officer searched the A-file and did not find an application by Mr. Rico-Carrillo for permission to enter the United States. Mr. Rico-Carrillo anticipates that the Government will attempt to admit a "Certificate of Non-Existence of Record" against her, arguing that if Mr. Rico-Carrillo had ever applied for permission to enter the United States, such an application would be found in the A-file and because such an application is not in the A-file, Mr. Rico-Carrillo must not have applied for permission to enter the United States.

Although the certificate might be admissible, the question of the thoroughness of the search conducted by the Government of the A-file is, and should be, open to cross-examination. United States v. Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation."). Mr. Rico-Carrillo should be able to review his A-file in order to see whether any application for lawful admission exists. Moreover, Mr. Rico-Carrillo should also be able to verify whether other documents that would ordinarily be in the A-file are "non-existent," or otherwise missing from her A-file. Mr. Rico-Carrillo may assert a defense that his application for lawful entry was lost or otherwise misplaced by the Government. She must be allowed the opportunity to review his A-file and the manner in which it is being maintained by the Government in order to present this defense.

In addition, Mr. Rico-Carrillo moves for the production of the following discovery:

1. **Mr. Rico-Carrillo's Statements.** The Government must disclose to Mr. Rico-Carrillo all copies of any written or recorded statements made by Mr. Rico-Carrillo; the substance of any statements made by Mr. Rico-Carrillo which the Government intends to offer in evidence at trial; any response by Mr. Rico-Carrillo to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of Mr. Rico-Carrillo's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to Mr. Rico-

Carrillo; as well as any other statements attributed to Mr. Rico-Carrillo. FED. R. CRIM. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all Mr. Rico-Carrillo's statements, whether written or oral, regardless of whether the Government intends to make any use of those statements. **Mr. Rico-Carrillo specifically requests all audio and videotaped copies of his statements and any rough notes taken pertaining to the substance of his statements. Mr. Rico-Carrillo requests that the government provide him with a court-certified transcript of the compact disc depicting Mr. Rico-Carrillo's post-arrest interrogation by the agents.**

2. **Arrest Reports, Notes and Dispatch Tapes.** Mr. Rico-Carrillo also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Rico-Carrillo or any other discoverable material is contained. Such material is discoverable under FED. R. CRIM. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Rico-Carrillo. See FED. R. CRIM. P. 16(a)(1)(B) and (c), FED. R. CRIM. P. 26.2 and 12(i).

3. **Brady Material**. Mr. Rico-Carrillo requests all documents, statements, agents' reports, and tangible evidence favorable to Mr. Rico-Carrillo on the issue of guilt and/or which affects the credibility of the Government's witnesses and the Government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

4. **Any Information That May Result in a Lower Sentence Under The Guidelines.** Notwithstanding the advisory nature of the sentencing guidelines, the Government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963), because it is exculpatory and/or mitigating evidence relevant to a possible future determination with respect to sentencing.

5. **Mr. Rico-Carrillo's Prior Record.** Mr. Rico-Carrillo requests disclosure of his prior record. FED. R. CRIM. P. 16(a)(1)(B).

6. **Any Proposed 404(b) Evidence.** Evidence of prior similar acts is discoverable under Fed. R.

Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

This request includes any "TECS" records as well as any other record(s) of prior border crossings (voluntary entries) that the Government intends to introduce at trial, whether in its case-in-chief, as impeachment, or in its rebuttal case. Although there is nothing intrinsically improper about prior border crossings (except, as here, where there are allegations of undocumented status), they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. United States v. Vega, 188 F.3d 1150, 1154-1155 (9th Cir. 1999).

The defendant requests that such notice be given three weeks before trial to give the defense time to adequately investigate and prepare for trial.

7. **Evidence Seized.** Mr. Rico-Carrillo requests production of evidence seized as a result of any search, either warrantless or with a warrant. FED. R. CRIM. P. 16(a)(1)(c).

8. **Request for Preservation of Evidence.** Mr. Rico-Carrillo specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, Mr. Rico-Carrillo's personal effects, and any evidence seized from Mr. Rico-Carrillo.

9. **Henthorn Material.** Mr. Rico-Carrillo requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See Kyles v. Whitley, 514 U.S. 419 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally

conduct examination of records; appropriate Government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); United States v. Herring, 83 F.3d 1120 (9th Cir. 1996) (accord).

10. **Tangible Objects.** Mr. Rico-Carrillo requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, or copies of portions thereof, which are material to the defense, intended for use in the Government's case-in-chief, or were obtained from or belong to Mr. Rico-Carrillo. FED. R. CRIM. P. 16(a)(1)(c). **Specifically, Mr. Rico-Carrillo requests copies of the audio tapes of his alleged prior deportations or removals.**

11. **Expert Witnesses.** Mr. Rico-Carrillo requests the name, qualifications, and a written summary of the testimony of any person that the Government intends to call as an expert witness during its case in chief. FED. R. CRIM. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. **Evidence of Bias or Motive to Lie.** Mr. Rico-Carrillo requests any evidence that any prospective Government witness is biased or prejudiced against Mr. Rico-Carrillo, or has a motive to falsify or distort his or her testimony.

13. **Impeachment Evidence.** Mr. Rico-Carrillo requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Rico-Carrillo. See FED. R. EVID. 608, 609 and 613; Brady v. Maryland.

14. **Evidence of Criminal Investigation of Any Government Witness.** Mr. Rico-Carrillo requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

15. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.** Mr. Rico-Carrillo requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

16. **Witness Addresses.** Mr. Rico-Carrillo requests the name and last known address of each prospective Government witness. Mr. Rico-Carrillo also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

17. **Name of Witnesses Favorable to Mr. Rico-Carrillo.** Mr. Rico-Carrillo requests the name of any witness who made an arguably favorable statement concerning Mr. Rico-Carrillo or who could not identify her or who was unsure of her identity, or participation in the crime charged.

18. **Statements Relevant to the Defense.** Mr. Rico-Carrillo requests disclosure of any statement relevant to any possible defense or contention that he might assert in his defense.

19. **Jencks Act Material.** Mr. Rico-Carrillo requests production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at trial to allow Mr. Rico-Carrillo to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

20. **Giglio Information & Agreements Between the Government and Witnesses.** Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Rico-Carrillo requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment.

21. **Agreements Between the Government and Witnesses.** Mr. Rico-Carrillo requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future

compensation, or any other kind of agreement, promise, or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed, and specifically includes any discussion with a potential witness regarding that witness' immigration status and/or any affect that the witness' statements or lack thereof might have on that status, including the granting or revoking of such immigration status or any other immigration status, including but not limited to citizenship, nationality, a green card, border crossing card, parole letter, or permission to remain in the United States.

22. **Informants and Cooperating Witnesses.** Mr. Rico-Carrillo requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Rico-Carrillo. The Government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Rico-Carrillo. Brady v. Maryland, 373 U.S. 83 (1963)

23. **Bias by Informants or Cooperating Witnesses.** Mr. Rico-Carrillo requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information includes, but is not limited to, any inducements, favors, payments or threats that were made to the witness in order to secure cooperation with the authorities.

24. **Scientific and Other Information.** Mr. Rico-Carrillo requests the results of any scientific or other tests or examinations conducted by any Government agency or their subcontractors in connection with this case. See Rule 16(a)(1)(D).

25. **Residual Request.** Mr. Rico-Carrillo intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mr. Rico-Carrillo requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-

examination.

## III.

## THIS COURT SHOULD DISMISS THE INDICTMENT FOR ITS FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE

The indictment charges Mr. Rico-Carrillo with being a previously-deported alien found in the United States in violation of 8 U.S.C. § 1326. The indictment fails to allege elements necessary to convict Mr. Rico-Carrillo of the offense: that Mr. Rico-Carrillo knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States. As a consequence, it must be dismissed. See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under the immigration law); see also United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999);.

However, because these issues were decided against Mr. Rico-Carrillo in United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004), they are not briefed herein, but are raised to preserve them for further appeal. (Mr. Rico-Carrillo would be happy to submit further briefing on these issues to this Court, if so ordered.)

## IV.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

***Defense counsel has received only210 pages of discovery***. As more information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, the defense may find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.

## CONCLUSION

For the foregoing reasons, Mr. Rico-Carrillo respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: March 21, 2008

*s/ Leila W. Morgan*

**LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Rico-Carrillo
Leila_Morgan@fd.org