KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035
Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE RICO-CARRILLO,<br><br>Defendant. | CRIM. CASE NO. 08CR0363-DMS<br><br>DATE: May 9, 2008<br>TIME: 11:00 a.m.<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1) COMPEL DISCOVERY AND PRESERVE EVIDENCE;<br>(2) DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE NECESSARY ELEMENTS; AND<br>(3) GRANT LEAVE TO FILE FURTHER MOTIONS. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

On February 13, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Jose Rico-Carrillo ("Defendant") with Attempted Entry After Deportation, in violation of Title 8, United States Code, Section 1326, and False Claim to United States citizenship,

in violation of 18 United States Code, Section 911. The Indictment further alleged that Defendant had been removed from the United States subsequent to May 29, 1998. Defendant was arraigned on the Indictment on February 14, 2008, and entered a plea of not guilty.

## II

## STATEMENT OF FACTS

### A. THE INSTANT OFFENSE

On January 31, 2008, at approximately 2:35 a.m., Defendant applied for admission into the United States from Mexico at the San Ysidro, California Port of Entry pedestrian primary lanes. At primary inspection, Defendant claimed that he was a United States citizen by virtue of birth in Orange County, California. Also, Defendant claimed that he was going to La Habra, California. When the primary officer asked to see a birth certificate and identification card, Defendant claimed that he lost those documents. Defendant was then referred to secondary inspection.

At secondary, Officer J. Serrato began to inspect Defendant. Defendant claimed that he went to Mexico to take a vacation and party. Additionally, Defendant claimed that he had been drinking alcohol for three days and that the police had stolen his wallet and identification. As Officer Serrato tried to obtain additional information from Defendant, Defendant stated, “I was born in Mexico!” Immediately thereafter, Defendant started to run northbound towards the pedestrian exit. Officers apprehended Defendant and conducted record checks on Defendant.

Defendant’s fingerprints were entered in the IAFIS system (Integrated Automated Fingerprint Identification System) and the IDENT system (Automated Biometric Identification System), which revealed that Defendant had a criminal history and had been previously deported from the United States. Also, immigration records contained no evidence that Defendant applied for or received permission to legally re-enter the United States.

At approximately 4:30 a.m., Defendant was advised of his Miranda rights and invoked his right to remain silent.

### B. DEFENDANT’S IMMIGRATION HISTORY

Defendant is a citizen of Mexico. On February 5, 2003, a Final Administrative Deportation Order was issued, ordering Defendant removed from the United States to Mexico. Defendant was

removed from the United States to Mexico on at least one occasion - January 30, 2008 via the San Ysidro, California Port of Entry.

## III

## ARGUMENT

### A. THE COURT SHOULD DENY DEFENDANT'S REQUEST FOR AN ORDER TO COMPEL DISCOVERY

The United States has and will continue to fully comply with its discovery obligations. To date, the United States has produced 201 pages of discovery to Defendant's counsel, along with a DVD recording of Defendant's post-arrest interview and DVD depicting the time when Defendant was in the pedestrian lanes and the secondary security office at the San Ysidro Port of Entry. Additionally, at the last motion hearing, Government counsel reminded defense counsel that Defendant was ordered removed pursuant to an administrative deportation order. Thus, a deportation tape does not exist in this case.

Regarding Defendant's request to inspect the Alien Registration File ("A-File") associated with Defendant, the United States objects to this request. This information is equally available to Defendant through a Freedom of Information Act request. Even if Defendant could not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information. The A-File contains information that is not discoverable like internal government documents and witness statements. See Fed. R. Crim. P. 16(a)(2). Witness statements would not be subject to production until after the witness for the United States testifies and provided that a "motion" is made by Defendant. See Fed. R. Crim. P. 16(a)(2) and 26.2. Thus, the entire A-File associated with Defendant need not be disclosed. However, documents memorializing the deportation have already been produced to the defense.

Government counsel believes that all discovery disputes can be resolved amicably and informally in this case. In view of the below-stated position of the United States concerning discovery, it is respectfully requested that no orders compelling specific discovery by the United States be made at this time. The Government has no objection to the preservation of evidence for a reasonable time period.

1. Defendant's Statements

The United States recognizes its obligation under Federal Rules of Criminal Procedure ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant any written statements and the substance of Defendant's oral statements. The United States has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this time. If the United States discovers additional oral or written statements that require disclosure under the relevant Rules, such statements will be promptly provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).

If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

The Government objects to the defense request for a court-certified transcript of Defendant's statements. First, the defense has not, and cannot, cite to any authority which requires the Government to produce a court-certified transcript. Second, the Government provided defense counsel with the DVD of Defendant's post-arrest interview. Third, after Defendant was read his Miranda rights, Defendant invoked his right to remain silent.

2. Arrest Reports, Notes and Dispatch Tapes

The United States has already produced to Defendant all arrest reports known to the Government at this time. The United States is not aware of any dispatch tape related to this case at this time. As stated above, the United States objects to the production of rough notes at this time. However, the United States has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers.

3. Brady Material

The United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

4. Any Information That May Result in a Lower Sentence

The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963).

5. Defendant's Prior Record

The United States has provided Defendant with a copy of Defendant's known prior criminal record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir. 1990). Should the United States determine that there are any additional documents pertaining to Defendant's prior criminal record, those will be promptly provided to Defendant.

6. Any Proposed 404(b) Evidence

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

7. Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

8. Request for Preservation Evidence

As stated above, the United States will preserve all evidence to which the Defendants are entitled pursuant to the relevant discovery rules. The United States also has no opposition to a preservation order, should Defendant seek one from this Court.

9. Henthorn Material

The United States will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

10. Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984). As stated above, an audio tape of a deportation hearing does not exist for Defendant since he was deported pursuant to an administrative order.

11. Expert Witnesses

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

12. Evidence of Bias or Motive to Lie

The United States is unaware of any evidence showing that any prospective Government witness is biased or prejudiced against Defendant or has a motive to falsify testimony. The United States will comply with its obligations under Brady, Henthorn, and Giglio.

13. Impeachment Evidence

The United States is unaware of any evidence that any prospective witness has engaged in any criminal act, but will comply with its obligations under Brady, Henthorn, and Giglio, as well as all other applicable rules of discovery. The Government is unaware of any statements favorable to Defendant, and repeats that all reports from the date of arrest have been produced.

14. Evidence of Criminal Investigation of Any Government Witness

The United States objects to providing any evidence that a prospective witness is under criminal investigation, but will provide the conviction record, if any, which could be used to impeach all witnesses the United States intends to call in its case-in-chief.

In addition, the United States will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

15. Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity

The United States is unaware of any evidence tending to show that any prospective witness's ability to perceive, recollect, tell the truth, or communicate is impaired.

16. Witness Addresses

The United States objects to this request as overbroad, unnecessary, and unsupported. Through discovery, Defendant has the names of the officers and agents involved in her arrest. In addition, the United States will provided Defendant with a list of witnesses it intends to call in its trial memorandum. The United States objects to the request for the name and address of witnesses who will not be called by the Government at trial as overbroad and irrelevant.

17. Name of Witnesses Favorable to the Defendant

The United States is unaware of any witnesses favorable to Defendant.

18. Statement Relevant to the Defense

All known statements have been produced. The United States will continue to comply with its obligation to produce all evidence relevant to the defense.

19. Jencks Act Material

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

20. Giglio Information

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

21. Agreement Between the Government and Witnesses

There are no such agreements between the Government and the witnesses.

22. Informants and Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in camera inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness who is a material witness with evidence helpful to the defense or essential to a fair determination in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an in camera inspection.

23. Bias by Informants or Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case.

24. Reports of Scientific Tests or Examinations

The United States will provide Defendant with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

25. Residual Request

The United States has complied with Defendant's residual request for prompt compliance with Defendant's discovery requests and will continue to do so.

**B. DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED**

Defendant contends that the Court should dismiss the indictment for failure to allege that he knew he was in the United States and that he voluntarily entered the United States. This argument has been rejected by the Ninth Circuit in United States v. Rivera-Sillas, 417 F.3d 1014 (9th Cir. 2005).

A "found in" offense under 8 U.S.C. § 1326 is a general intent crime. Id. at 1020. An indictment that alleges that the defendant is "a deported alien subsequently found in the United States without permission suffices [to allege general intent].'" Id. (citations omitted).

Defendant further claims that the indictment is also deficient for failure to undergo inspection and admission by an immigration officer at the nearest inspection checkpoint. The Ninth Circuit also foreclosed this argument in Rivera-Sillas, 417 F.3d at 1019-20. The Rivera-Sillas court specifically held that the Government was not required to charge all the elements of entry. Id. at 1020. The Government need not plead and prove entry in order to charge or convict an alien with a § 1326 'found in' crime. Id. Consequently, this motion should also fail.

**C. Motion for Leave to File Further Motions**

The Government opposes this request unless the motion is based upon newly discovered evidence not available to Defendant at the time of the motion hearing. On, February 28, 2008, the Government provided defense counsel with 52 pages of discovery and a DVD recording of Defendant's post-arrest interview. On March 14, 2008, the Government provided defense counsel with 149 pages from Defendant's A-file and recordings of Defendant while he was at the pedestrian lanes and secondary security office on the day of the offense. The defense has had adequate time to file motions

in this case. Therefore, the Government would oppose leave to file further motions unless the motion is based upon newly discovered evidence.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests that Defendant's Motions be denied where opposed.

DATED: May 2, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ Luella M. Caldito

LUELLA M. CALDITO
Assistant U.S. Attorney
Luella.Caldito@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE RICO-CARILLO,<br>Defendant. | ) | Case No. 08CR0363-DMS<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; (2) DISMISS INDICTMENT FOR FAILURE TO ALLEGE NECESSARY ELEMENTS; AND (3) GRANT LEAVE TO FILE FURTHER MOTIONS

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Leila W. Morgan, Esq., Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2008.

/s/ Luella M. Caldito
LUELLA M. CALDITO